# UNITED STATES DISTRICT COURT
### for the
### Western District of Kentucky
### Louisville Division

| | |
|---|---|
| William Loman )<br>    *Plaintiff* )<br>)<br>v. )<br>)<br>Enhanced Recovery Co., LLC )<br>    *Defendant* )<br>Serve: )<br>    The Corporation Trust Company )<br>    Corporation Trust Center )<br>    1209 Orange Street )<br>    Wilmington, DE 19801 )<br>)<br>Louisville Recovery Service, LLC )<br>    *Defendant* )<br>Serve: )<br>    Cindy Habeeb )<br>    1939 Goldsmith Lane, Suite 135 )<br>    Louisville, KY 40218 )<br>)<br>Trans Union, LLC )<br>    *Defendant* )<br>Serve: )<br>    The Prentice Hall Corp. System )<br>    421 West Main Street )<br>    Frankfort, KY 40601 )<br>) | Case No.  3:18-cv-591-DJH |

## COMPLAINT and DEMAND FOR JURY TRIAL

    1.    This is an action brought by a consumer for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), which was enacted to eliminate abusive debt collection practices by debt collectors; and for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1692 *et seq.* ("FCRA") which was enacted to ensure fairness, accuracy and privacy of the personal information contained in the files of the credit reporting agencies.

## JURISDICTION and VENUE

2. This Court has jurisdiction pursuant to the FDCPA, 15 U.S.C. § 1692k, the FCRA, 15 U.S.C. §1681p, and 28 U.S.C. § 1367 and venue is proper because the nucleus of relevant facts and events that damaged Plaintiff occurred within Jefferson County, Kentucky which is located within this District.

## PARTIES

3. Plaintiff William Loman is a natural person who resides in Jefferson County, Ky. Mr. Loman is a natural individual person and a "consumer" within the meaning of the FDCPA, as defined by 15 U.S.C. § 1692a(3), and the FCRA, as defined at 15 U.S.C. § 1681a(c).

4. Defendant Enhanced Recovery Company, LLC ("ERC") is a Delaware limited liability company, with its principal place of business located at 8014 Bayberry Road, Jacksonville, FL 32256 and ERC has not registered with the Kentucky Secretary of State. ERC is engaged in the business of collecting debts on behalf of other creditors and debt collectors.

5. ERC is a "debt collector" as defined by the FDCPA at 15 U.S.C. §1692a(6) because it regularly collects consumer individual debts of natural persons who are citizens of Kentucky using instrumentalities of interstate commerce or the mails in its business the principal purpose of which is the collection of debts. ERC is also a "furnisher of information" to credit reporting agencies within the meaning of the FCRA.

6. Defendant Louisville Recovery Service, LLC ("LRS") is a domestic limited liability company whose principal office is located at 3207 Oriole Drive, Louisville, KY 40213 registered with the Kentucky Secretary of State and engaged in the business of collecting debts on behalf of other creditors and debt collectors.

7. LRS is a "debt collector" as defined by the FDCPA at 15 U.S.C. §1692a(6) because it regularly collects consumer individual debts of natural persons who are citizens of Kentucky using instrumentalities of interstate commerce or the mails in its business the principal purpose of which is the collection of debts. ERC is also a "furnisher of information" to credit reporting agencies within the meaning of the FCRA.

8. Defendant Trans Union, LLC ("Trans Union") is a foreign limited liability company whose principal place of business is located at 555 West Adams, Chicago, IL 60661. Trans Union has registered to do business with Kentucky Secretary of State.

9. Trans Union is a "consumer reporting agency" within the meaning of the FCRA because it provides and acquires personal retail and credit transaction information of private persons for use in, and in furtherance of, its business operations.

## STATEMENT OF FACTS

10. Like many of his fellow Americans, Plaintiff William Loman ("Loman") is keenly aware of the importance of his credit score.

11. As explained on Bankrate.com, a person's credit score is important to many major life events: including housing, employment, and credit:

> Today's economy runs on credit. If you want to get a mortgage loan for a house or a student loan to pay for college, or if you just want to put your lunch on a credit card, a company is extending credit to you.
>
> Your creditworthiness is defined by your three-digit credit score and is the key to your financial life. Good credit can be the make-or-break detail that determines whether you'll get a mortgage, car loan or student loan. On the other hand, bad credit will make it more difficult for you to get a credit card with a low interest rate and it will make it more expensive to borrow money for any purpose, says Liz Pulliam Weston, author of "Your Credit Score."
>
> But even if you're not in the market for a loan, good credit can have a major impact, Weston says.
>
> "Your credit information can be a factor in whether or not you can rent a nice apartment, how much you pay for insurance or whether or not you can get a job," she says. Landlords, insurers and employers frequently use credit information as a litmus test to see if the people they are dealing with are reliable and responsible.
>
> Bad credit can suggest you're a risky bet. While bad credit may only show the details of how you deal with debt, some will extrapolate the characteristics from your financial life to other situations and assume that your bad credit implies that you may be just as irresponsible driving a car, taking care of an apartment or showing up for a job, Weston notes.
>
> Good credit can signify that your financial situation—and the rest of

your life—is on the right track.[1]

12. Mr. Loman seeks to improve his credit score and rating in order to qualify for a home loan and other credit.

13. On January 3, 2018, Mr. Loman applied for home loan or for preapproval for a home loan with MB Financial Bank, N.A. ("MB Financial").

14. As part of the application MB Financial requested, obtained, reviewed and relied upon a tri-merged credit report published by CBCInnovis.

15. MB Financial denied Mr. Loman's application based on the credit information contained in his CBCInnovis credit report.

16. Mr. Loman discovered several false and inaccurate tradelines on the CBCInnovis credit report, including tradelines furnished by Defendants Enhanced Recovery Co., LLC ("ERC") and Louisville Recovery Service, LLC ("LRS").

17. The ERC tradeline was a collection account for an alleged debt originated by T-Mobile.

18. Mr. Loman has never had a T-Mobile account and he has had the same phone number and service for the previous fifteen (15) years.

19. The T-Mobile debt was incurred for personal, family, or household purposes which makes the T-Mobile debt a "debt" within the meaning of the FDCPA.

20. ERC was furnishing the negative information concerning the T-Mobile debt for purposes of collecting a "debt" from Mr. Loman. *Sullivan v. Equifax, Inc.*, CIV.A. 01-4336, 2002 WL 799856 (E.D. Pa. Apr. 19, 2002) ("[R]eporting a debt to a credit reporting agency is 'a powerful tool designed, in part, to wrench compliance with payment terms.'").

21. The LRS tradeline was collection account for an unidentified medical debt with an opened date of August 2016.

22. Mr. Loman was unaware of any potential unpaid medical debt from the year 2016.

23. The LRS medical debt was incurred for personal, family, or household purposes, which makes the LRS medical debt a "debt" within the meaning of the FDCPA.

---

[1] http://www.bankrate.com/finance/credit-cards/why-is-good-credit-so-important.aspx

24. LRS was furnishing the negative information concerning the unidentified medical debt for purposes of collecting a "debt" from Mr. Loman. *Sullivan, supra.*

25. On January 15, 2018, Mr. Loman sent a dispute letters to all three consumer reporting agencies ("CRA's")—Equifax Information Services, LLC; Experian Information Solutions, Inc.; and Defendant Trans Union, LLC ("Trans Union")—that disputed the ERC and GLA tradelines. As to ERC, the dispute letter noted that the debt was not Mr. Loman's debt and that he had never had a T-Mobile account. As to LRS, the dispute letter disputed the recency of the credit information.

26. Receipt of Mr. Loman's dispute letter triggered the CRAs' duty under 15 U.S.C. § 1681i(a)(2) to send ERC and LRS notice of Mr. Loman's dispute within five business days of receipt of Mr. Loman's dispute.

27. ERC's and LRS's receipt of Mr. Loman's dispute letter from one or more of the CRAs triggered ERC's and LRS's duty under 15 U.S.C. § 1681s-2(b)(1) to conduct an investigation of Mr. Loman's dispute.

28. As a result of the investigation of Mr. Loman's dispute, Trans Union did not update Mr. Loman's credit report and file to reflect that he had disputed either the ERC or LRS collection accounts.

29. ERC failed to conduct a reasonable investigation into Mr. Loman's disputes concerning the negative credit information concerning Mr. Loman and the credit information that ERC was furnishing to Trans Union concerning the T-Mobile debt.

30. ERC falsely verified the accuracy of the disputed negative credit information to Trans Union.

31. ERC failed to note in its investigative results to Trans Union that Mr. Loman had disputed the credit information furnished by ERC concerning the T-Mobile debt.

32. In the alternative, ERC did note in its investigative results to Trans Union that Mr. Loman had disputed the debts at issue, but Trans Union failed to note that Mr. Loman had disputed the ERC/T-Mobile debt in the credit reports it published to its users and subscribers.

33. LRS failed to conduct a reasonable investigation into Mr. Loman's disputes concerning the negative credit information concerning Mr. Loman and the credit information that LRS was furnishing to Trans Union concerning the unidentified medical debt.

34. LRS falsely verified the accuracy of the disputed negative credit information to Trans Union.

35. LRS failed to note in its investigative results to Trans Union that Mr. Loman had disputed the credit information furnished by LRS concerning the unidentified medical debt.

36. Alternatively, LRS did note in its investigative results to Trans Union that Mr. Loman had disputed the debt at issue, but Trans Union failed to note that Mr. Loman had disputed the LRS/unidentified medical debt in the credit reports it published to its users and subscribers.

37. As a result of ERC's failure to conduct a reasonable investigation of Mr. Loman's disputes and its failure to note that Mr. Loman had disputed the T-Mobile debt, Mr. Loman suffered actual damages in the form of out-of-pocket expenses, lowered credit score and denial of credit.

38. Alternatively, as a result of Trans Union's failure to note that Mr. Loman had disputed the ERC/T-Mobile debt Mr. Loman suffered actual damages in the form of out-of-pocket expenses, lowered credit score and denial of credit.

39. As a result of LRS's failure to conduct a reasonable investigation of Mr. Loman's disputes and its failure to note that Mr. Loman had disputed the unidentified medical debt, Mr. Loman suffered actual damages in the form of out-of-pocket expenses, lowered credit score and denial of credit.

40. Alternatively, as a result of Trans Union's failure to note that Mr. Loman had disputed the LRS/unidentified medical debt, Mr. Loman suffered actual damages in the form of out-of-pocket expenses, lowered credit score and denial of credit.

## CLAIMS FOR RELIEF

I. **Claims against Enhanced Recovery Co., LLC**

A. **Violations of the Fair Debt Collection Practices Act**

41. The foregoing acts and omissions of Defendant Enhanced Recovery Co., LLC ("ERC") constitute violations of the FDCPA including but not limited to 15 U.S.C. § 1692e and 15 U.S.C. § 1692f. ERC's violations included attempting to collect a debt from Mr. Loman that he does not owe, misrepresenting the legal status of a T-Mobile debt, and by furnishing false credit information about Mr. Loman.

**B.     Violations of the Fair Credit Reporting Act**

42.     The foregoing acts and omissions of Defendant Enhanced Recovery Co., LLC ("ERC") violate the FCRA.

43.     After being informed by Trans Union that Mr. Loman disputed the accuracy of the information it was furnishing to Trans Union concerning Mr. Loman and the T-Mobile debt, ERC willfully failed to conduct a proper investigation of Mr. Loman's dispute, filed with Trans Union, that ERC was furnishing false negative credit information about Mr. Loman and the T-Mobile debt.

44.     ERC willfully failed to review all relevant information purportedly provided by Trans Union to ERC in conducting its investigation, as required by 15 U.S.C. § 1681s-2(b)(B).

45.     ERC willfully failed to direct Trans Union to delete inaccurate information about Mr. Loman pertaining to the T-Mobile debt as required by 15 U.S.C. § 1681s-2(b)(C).

46.     ERC also violated the FCRA by failing to note that Mr. Loman had disputed the ERC/T-Mobile tradeline as required by 15 U.S.C. § 1681s-2(b). *See Seamans v. Temple Univ.*, 744 F.3d 853, 867 (3d Cir. 2014) (holding "that a private cause of action arises under 15 U.S.C. § 1681s–2(b) when, having received notice of a consumer's potentially meritorious dispute, a furnisher subsequently fails to report that the claim is disputed").

47.     Mr. Loman has a private right of action to assert claims against ERC arising under 15 U.S.C. §1681s-2(b).

48.     ERC is liable to Mr. Loman for the actual damages he has sustained by reason of its willful violations of the FCRA, in an amount to be determined by the trier of fact or up to $1,000.00 in statutory damages, whichever is greater, and an award of punitive damages in an amount to be determined by the trier of fact and his reasonable attorney's fees pursuant to 15 U.S.C. §1681n.

49.     Alternatively, ERC's conduct, actions and inactions were negligent or grossly negligent rendering ERC liable to Mr. Loman under 15 U.S.C. § 1681o for actual damages, along with attorney's fees and costs.

**II.    Claims against Louisville Recovery Service, LLC**

**A.     Violations of the Fair Debt Collection Practices Act**

50.     The foregoing acts and omissions of Defendant Louisville Recovery Service, LLC

("LRS") constitute violations of the FDCPA including but not limited to 15 U.S.C. § 1692e and 15 U.S.C. § 1692f. LRS's violations included attempting to collect a debt from Mr. Loman that he does not owe, misrepresenting the legal status of a unidentified medical debt, and by furnishing false credit information about Mr. Loman.

### B. Violations of the Fair Credit Reporting Act

51. The foregoing acts and omissions of Defendant Louisville Recovery Service, LLC ("LRS") violate the FCRA.

52. After being informed by Trans Union that Mr. Loman disputed the accuracy of the information it was furnishing to Trans Union concerning Mr. Loman and the unidentified medical debt, LRS willfully failed to conduct a proper investigation of Mr. Loman's dispute, filed with Trans Union, that LRS was furnishing false negative credit information about Mr. Loman and the unidentified medical debt.

53. LRS willfully failed to review all relevant information purportedly provided by Trans Union to LRS in conducting its investigation, as required by 15 U.S.C. § 1681s-2(b)(B).

54. LRS willfully failed to direct Trans Union to delete inaccurate information about Mr. Loman pertaining to the unidentified medical debt as required by 15 U.S.C. § 1681s-2(b)(C).

55. LRS also violated the FCRA by failing to note that Mr. Loman had disputed the LRS/T-Mobile tradeline as required by 15 U.S.C. § 1681s-2(b). *See Seamans v. Temple Univ.*, 744 F.3d 853, 867 (3d Cir. 2014) (holding "that a private cause of action arises under 15 U.S.C. § 1681s–2(b) when, having received notice of a consumer's potentially meritorious dispute, a furnisher subsequently fails to report that the claim is disputed").

56. Mr. Loman has a private right of action to assert claims against LRS arising under 15 U.S.C. §1681s-2(b).

57. LRS is liable to Mr. Loman for the actual damages he has sustained by reason of its willful violations of the FCRA, in an amount to be determined by the trier of fact or up to $1,000.00 in statutory damages, whichever is greater, and an award of punitive damages in an amount to be determined by the trier of fact and his reasonable attorney's fees pursuant to 15 U.S.C. §1681n.

58. Alternatively, LRS's conduct, actions and inactions were negligent or grossly negligent rendering LRS liable to Mr. Loman under 15 U.S.C. § 1681o for his actual damages and his attorney's fees and costs.

### III. Claims against Trans Union, LLC

59. Mr. Loman sent written disputes to Defendant Trans Union, LLC ("Trans Union") disputing the tradelines furnished by ERC and LRS.

60. ERC and LRS each had a duty under 15 U.C.S. § 1681s-2(a)(3) to notify Trans Union that Mr. Loman had disputed the tradelines each was furnishing concerning Mr. Loman after Trans Union notified of Mr. Loman's dispute.

61. After ERC and LRS notified Trans Union that Mr. Loman had disputed each tradeline, Trans Union had a duty under 15 U.S.C. § 1681c(f) to indicate in the credit reports that it published to its users, including to Mr. Loman, that Mr. Loman had disputed the ERC and LRS tradelines at issue.

62. Mr. Loman's post-dispute Trans Union credit reports consistently failed to indicate that Mr. Loman had disputed the ERC and LRS tradelines.

63. Trans Union willfully, or alternatively, negligently, violated the Fair Credit Reporting Act, 15 U.S.C. 1681c(f).

64. Trans Union is liable to Mr. Loman for the actual damages he has sustained by reason of its willful violations of the FCRA in an amount to be determined by the trier of fact or up to $1,000.00 in statutory damages, whichever is greater, and punitive damages in an amount to be determined by the trier of fact and his reasonable attorney's fees pursuant to 15 U.S.C. § 1681n.

65. Alternatively, Trans Union is liable to Mr. Loman for the actual damages he has sustained by reason of its negligent or grossly negligent violation of the FCRA in an amount to be determined by the trier of fact and his reasonable attorney's fees pursuant to 15 U.S.C. § 1681o.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff William Loman requests that the Court grant him the following relief:

1. Award Plaintiff the maximum amount of statutory damages against ERC and LRS under 15 U.S.C. § 1692k for ERC and LRS's violations of the FDCPA;

2. Award Plaintiff the maximum amount of statutory damages against each Defendant under 15 U.S.C. §1681n for each Defendant's willful violations of the FCRA;

3. Award Plaintiff his actual damages against each Defendant under the FDCPA, 15 U.S.C. § 1692k, and/or the FCRA, 15 U.S.C. §1681n or, in the alternative, under 15 U.S.C. § 1681o;

4 Award Plaintiff punitive damages against each Defendant under 15 U.S.C. § 1681n for each Defendant's willful violations of the FCRA;

5. Award Plaintiff his attorney's fees, litigation expenses and costs;

6. A trial by jury; and

7. Any other relief to which Plaintiff may be entitled.

Respectfully submitted,

/s/ James R. McKenzie
James R. McKenzie
*James R. McKenzie Attorney PLLC*
115 S. Sherrin Avenue, Suite 5
Louisville, KY 40207
Tel:   (502) 371-2179
Fax:   (502) 257-7309
jmckenzie@jmckenzielaw.com

James H. Lawson
*Lawson At Law PLLC*
115 S. Sherrin Avenue, Suite 5
Louisville, KY 40207
Tel:   (502) 371-2179
Fax:   (502) 257-7309
james@kyconsumerlaw.com